FRANK *v.* FRANK

[No. 133, October Term, 1954.]
(Two Appeals In One Record)

*Decided April 21, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Justinus Gould,* for appellant.

*Morton H. Perry,* for appellee.

COLLINS, J., delivered the opinion of the Court.

Here are appeals from orders denying permanent alimony, alimony *pendente lite,* counsel fees, costs of appeal and counsel fee for appeal.

This is the second time this case has come to this Court, the first being *Frank v. Frank,* 203 Md. 361, 101

A. 2d 224, an appeal from Judge Smith. As pointed out in the first case, on May 14, 1950, Zelma Frank, the appellant there and in this case, filed a bill for permanent alimony, alimony *pendente lite* and counsel fee against her husband, Eliot Frank, the appellee there and here. On August 31, 1950, the parties entered into an agreement by which Eliot Frank agreed to release and waive to Zelma Frank, her heirs and assigns, all his right and claim to any real or personal property which Zelma Frank possessed, or might hereafter possess, and his dower interest and any rights in her estate. Zelma Frank agreed for herself, her heirs and assigns, to release and waive "all her right, title or claim to support, maintenance or alimony now and at any time in the future," as well as all her rights in her husband's property then possessed by him or hereafter possessed by him. Among other provisions in the agreement, Eliot Frank agreed in paragraph 6, subject to the approval and further order of the court, to pay the sum of $40.00 per week to the said Zelma Frank for the support and maintenance of the two infant children of the parties, Frederick and Stanley. On May 13, 1952, a decree was passed by the then chancellor, John T. Tucker, granting Zelma Frank a divorce *a mensa et thoro*. This decree contained the agreement of August 31, 1950, between the parties aforesaid, except that, in lieu of paragraph 6 in the former agreement, another paragraph 6 was inserted in the agreement between the parties. This new paragraph 6 provided "that the defendant Eliot Frank shall pay all medical expenses incurred and to be incurred because of the present illness of the minor child, Stanley D. Frank, and meanwhile shall pay to the plaintiff, Zelma Frank, the sum of sixteen dollars per week for the support of the minor child, Frederick W. Frank, all subject to the further order of the Court."

On May 24, 1952, appellant filed in the case a petition for allowance of permanent alimony, alimony *pendente lite* and counsel fee. She recited therein the former proceedings in the case and the new paragraph 6 contained

in the decree of May 13, 1952. The petition further stated that Eliot Frank had failed and refused to pay the medical expenses of Stanley D. Frank, which he had agreed to pay, and that Zelma Frank had been forced to pay the same to preserve the health of her child. The petition further alleged that, as Eliot Frank had breached the agreement as amended, he was no longer entitled to the benefits thereof, and that she was entitled to be awarded alimony, both temporary and permanent. Judge Smith on March 6, 1953, denied said petition for alimony, without prejudice to the right of the petitioner to file an amended petition claiming increase support for the children of the parties. On appeal we pointed out that the order to pay medical expenses was beyond the chancellor's authority, in the absence of agreement by the parties, and also that the husband's liability to pay for necessaries furnished his minor child, is to the supplier in an action at law and not enforceable by application of the wife to the divorce court. We further found that the incorporation of paragraph 6 in the decree did not close the door to inquiry into the validity of the agreement on which the decree was based. In that case there was no testimony to show whether there was any consideration for the wife's waiver of alimony other than the agreement by the husband to pay the medical expenses of Stanley. We, therefore, remanded the case for the purpose of taking further testimony on the question of the wife's means of support and her husband's ability to support her; and whether there was any reasonable possibility of the wife's acquiring an estate which would make the relinquishment by each of all rights in the other's property a real consideration. There was also a question as to the status of a divorce proceeding in Florida between these parties. We there stated that, if the testimony showed on the remand, there was no real consideration to the wife for her relinquishment of alimony, that the wife was without means of support and her husband was able to support her, and that the husband's bill for divorce in Florida had been dismissed,

the chancellor should allow alimony to be awarded according to the circumstances of the parties.

On remand, testimony was taken before Judge Moser on the questions presented. That testimony showed that the divorce proceeding in Florida had been dismissed. In the testimony in the case it was also shown that at the hearing before Judge Moser a stipulation was offered in evidence. According to the opinion of Judge Moser: "The stipulation between the parties shows that at the time the original agreement was entered into by the terms of which the Petitioner waived alimony in the event that a divorce was granted her, she owned a one-seventh interest in an estate known as the 'Annie Fisher Estate', which estate was in trust for beneficiaries, including the Petitioner. It consisted of the following properties located in The City of Baltimore: Nos. 1, 3, 4, 5, 6, 9, 10, 11, 12 and 18 S. High Street, Nos. 7 and 9 Albemarle Street, Nos. 210-212 Guilford Avenue, No. 801 W. Baltimore Street. The exact value of these properties at that time has not been ascertained, but the tax assessment figures for them at that time were approximately $250,000." The chancellor further found that she owned at that time the property in which she resided, and still resides, at 3441 Reisterstown Road which had a value of approxiately $12,000.00.

Judge Moser therefore, by order, denied the appellant's petition for alimony and allowed her solicitor a counsel fee of $100.00. From that order appellant again appeals in the present case to this Court. The petitioner, Zelma Frank, also filed a petition for alimony *pendente lite* and for further counsel fees and costs of this second appeal. By order, Judge Cullen, also finding that the petitioner was well able to support herself during the appeal and able to advance the expenses thereof, denied her petition. From the orders of Judge Moser and Judge Cullen the appellant appeals, which constitute the present case.

Alimony is an award made by the court for food, clothing, habitation and other necessities for the mainte-

nance of the wife. *Hood v. Hood,* 138 Md. 355, 113 A. 895, 15 A. L. R. 774; *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A. 2d 451; *Safe Deposit & Trust Co. v. Robertson,* 192 Md. 653, 662, 65 A. 2d 292. When the husband, by the agreement of August 31, 1950, released and waived to his wife, her heirs and assigns, all his right, title and claim to the real and personal property which she possessed at that time and his dower interest and any rights in her estate, he, therefore, released all his interest in a one-seventh interest in property assessed for $250,-000.00. Zelma Frank testified that any one of the seven beneficiaries in the Annie Fisher estate, if he or she so desired, could break the trust and have their interest outright. There was, therefore, a valuable consideration passing from Eliot Frank to Zelma Frank for her releasing him from the payment of alimony to her then, and at any time in the future.

The appellant here contends that the agreement to pay the medical expenses of Stanley D. Frank was an integral part of the agreement by which she released the appellee from alimony. However, it is evident that for a valuable consideration she released her husband from alimony before Stanley became ill. Therefore, the provisions as to the payment of these medical expenses to her was supplemental to the release of alimony. As pointed out by Judge Moser, after Judge Smith originally dismissed the petition for alimony in the former case, Zelma Frank filed suit in the Superior Court of Baltimore City for money for medical expenses then unpaid by Eliot Frank. She obtained a judgment against him, which he paid. She evidently realized, therefore, that this was a supplemental agreement. It also appears from the testimony taken before Judge Moser that, by a collateral agreement executed with the aforesaid agreement, Eliot Frank placed in the hands of a trustee apparently all of his assets at that time. These consisted of three hundred shares of the common stock of the corporation which employed the defendant. Under this collateral agreement the stock was to belong to Zelma Frank for life,

she having no power to dispose of it except by consent of all the parties to the trust, and upon Eliot Frank's death the stock was to become the property of the children of the parties. It is, therefore, evident that there was ample consideration passing to the appellant here for her release of all alimony from the appellee then or in the future. This, therefore, disposes of any question of any alimony or alimony *pendente lite* being payable by the appellee to the appellant.

The remaining question is whether the appellant is entitled to counsel fees and costs of appeal. Extensive testimony was taken before the chancellor, who saw and heard the witnesses, as to the financial condition of the parties. The chancellor found that the appellant was receiving from the Annie Fisher estate income ranging from $4,000 to $6,000.00 annually. He further concluded that she had an income of at least $11,158.66 in 1952; $4,407.90 in 1953; and $2,400.00 up until June 15, 1954, when the hearing before him was held. Appellant contends that this finding by the chancellor was erroneous and relies on testimony of an accountant employed by the appellant to evaluate her income. However, this accountant testified that his information was obtained from the appellant. The chancellor stated that the appellant was very secretive about her financial resources, and the figures given by the accountant were deliberately vague and inaccurate. The chancellor further found nothing in the actions of the appellee to merit approval or reward. He broke up his home because of another woman and did everything possible to relieve himself of his marital obligations. He had lost his former position, and had apparently been forced to sell all of his assets to pay his debts, and was then employed as a salesman earning a net of $58.10 per week, out of which he is compelled to pay $16.00 for the support of Frederick and the medical expenses for Stanley.

It is said in *Hood v. Hood, supra,* at page 360: "The general rule is that the wife is a privileged suitor in divorce cases, and if she is 'without an income competent

for her support, and the maintenance of the suit,' living separated from her husband, the court will allow her alimony *pendente lite* and money to carry on her suit without inquiring into the merits. * * * But it is equally well established that when the wife has ample means of her own for her support and maintenance and to enable her to prosecute or defend her suit, she is not allowed alimony *pendente lite.* Sometimes there may be reasons for allowing her counsel fees and money for other expenses when the court, in the exercise of the discretion vested in it, will not grant alimony *pendente lite.*"

Here, of course, the chancellor had the atmosphere of the hearing and the opportunity to observe the appearance of the witnesses. If the record left us in doubt, which it does not do here, we should not disturb his findings of fact. *Collins v. Collins,* 184 Md. 655, 664, 42 A. 2d 680; *Burger v. Burger,* 204 Md. 495, 500, 104 A. 2d 923. On account of the financial circumstances of the parties, *Dougherty v. Dougherty, supra,* 33, we see no reason to allow the appellant further counsel fees and costs other than the costs in this Court. She has previously been allowed $600.00 in counsel fees in attempts to collect alimony from her husband. *Duckett v. Duckett,* 143 Md. 551, 559, 560, 123 A. 55. As to the costs of the former appeal, which it is alleged have not been paid by Eliot Frank, we ordered those paid by him in the former case. The orders here will be affirmed.

> *Orders affirmed, costs to be paid by the appellee.*